IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAOLA BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-269-SLP |
| | ) |
| ARCHER WESTERN CONSTRUCTION, LLC, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court is the Motion for Summary Judgment [Doc. No. 15] filed by Defendant Archer Western Construction, LLC ("Archer"). The Motion is at issue. *See* Pl.'s Resp. [Doc. No. 19]; Def.'s Reply [Doc. No. 20]. Archer seeks summary judgment on Plaintiff's negligence claim, which stems from a golf cart accident at her workplace. For the following reasons, the Motion is DENIED.

**I.   Governing Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether summary judgment is proper, the court does not weigh the evidence, but determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Material" issues of fact include those that, under the substantive law, "could have an effect on the outcome of the lawsuit." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson*, 477 U.S. at 249). And an issue is "genuine" when there is

sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). The Court construes the evidence in the light most favorable to the nomovant and draws all reasonable inferences in the nonmovant's favor. *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).

II.     **Factual Background**[1]

In December 2018, Archer began working on a construction project at the Draper Water Treatment Plant ("the Draper Facility"). In June 2019, construction began on South Douglas Boulevard. About four months after construction began on South Douglas, the City of Oklahoma City ("the City") hired Plaintiff Paola Brown as a plant operator at the Draper Facility. Plaintiff knew about the ongoing construction when she began working at the Draper Facility.

The City occasionally assigned Plaintiff to conduct "outside rounds," which required her to travel between seven different buildings located across the Draper Facility. When she was on outside rounds, Plaintiff would use one of the City's golf carts to travel between buildings.[2] Though she could take different paths to get around the Draper Facility, she nearly always took South Douglas to the generator building. At least two other paths led to the generator building, but Plaintiff preferred taking South Douglas

---

[1] The Court includes only material facts supported by the record and not genuinely disputed. *See* Fed. R. of Civ. P. 56(c).

[2] All of the City's golf carts were identical in terms of the brightness of their lights and the clarity of their windshields. Brown Dep. [Doc. No. 19-2] at 117:4–9.

because the alternative routes required her to drive over steep hills. South Douglas was also the path used during her training, although the City did not require her to take any particular route.

About a week before Plaintiff's accident, a gravel pile was placed near the construction site, partially blocking what would otherwise be the southbound lane of South Douglas. *See* Skaggs Aff. [Doc. No. 15-1] ¶ 4.[3] The gravel pile measured 6–8 feet tall, 10–15 feet wide, and 50–60 feet long. *See id.* ¶ 6.[4] On March 15, 2020, Plaintiff was working outside rounds during the night shift. She drove the golf cart to the generator building without incident.[5] It was either raining or sleeting that evening, and there were no lights on the road. The golf cart's scratched plastic windshield was more difficult to see through than glass, and the cart was not equipped with windshield wipers. Under these

---

[3] Plaintiff argues that "[t]he credibility of [Assistant Project Manager Skylar Skaggs] . . . an employee of Defendant, creates a question of fact for the jury to decide." Pl.'s Resp. to Def.'s UMF ¶ 9. Plaintiff relies on an Oklahoma Supreme Court case, which does not govern matters of procedure in federal courts. *See Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1194–95 (10th Cir. 2002) ("[A] federal court sitting in diversity will be guided by federal-law standards governing summary judgment procedure."). Under the applicable standard, Plaintiff's bare assertion that Mr. Skaggs lacks credibility because he works for Archer is insufficient to create a genuine issue of material fact. *See Helvie v. Jenkins*, 66 F.4th 1227, 1235 (10th Cir. 2023) ("[A]t the summary judgment stage of litigation, the party challenging the credibility of a sworn statement must produce specific facts in order to put credibility in issue so as to preclude summary judgment. Unsupported allegations that credibility is in issue will not suffice." (cleaned up)).

[4] Plaintiff disputes this fact, arguing "[t]he affiant is not testifying from personal knowledge" but is instead "making wide range 'guestimates' based on photos taken after the fact." Pl.'s Resp. to Def.'s UMF ¶ 10. But Plaintiff provides no evidence to support this assertion (e.g., deposition testimony from Mr. Skaggs). The affidavit, which Mr. Skaggs signed under penalty of perjury, states that it "is made upon personal knowledge." Skaggs Aff. [Doc. No. 15-1] ¶ 1. Accordingly, Plaintiff has not created a genuine issue of material fact as to the size of the gravel pile.

[5] The parties appear to agree that Plaintiff drove north on South Douglas toward the generator building just before the accident, though neither party cites evidence to support this position. *See* Def.'s UMF ¶ 17; Pl.'s Resp. [Doc. No. 19] at 2.

conditions, the dim glow of the golf cart's headlights only allowed Plaintiff to see about three to four feet ahead of her. At around 10:30 p.m., Plaintiff left the generator building. She was driving in the righthand, southbound lane of South Douglas when she saw a pile of gravel situated on the right side of the road, about three feet in front of her. She swerved to avoid the gravel and ultimately crashed the golf cart, which did not have a seat belt, into a ditch. While she was unsure of her speed, Plaintiff estimated she was traveling between 15 and 20 miles per hour.[6] Plaintiff reported injuries from the crash.

The parties dispute what types of warnings or barricades, if any, Archer erected around the gravel pile.[7] The pile had been present for about a week at the time of the accident. Though Plaintiff knew she was driving through a construction area that was closed to the public, the South Douglas path did not appear to be closed to employees. And

---

[6] Plaintiff disputes this fact because she stated several times that she didn't know her speed at the time of the accident. Nevertheless, Plaintiff's deposition testimony reflects that she estimated she was driving between 15 and 20 miles per hour. *See* [Doc. No. 15-2] at 123:20–124:4. Plaintiff points to no other evidence in the record that conflicts with this assertion. *See* Fed. R. Civ. P. 56(c). The only evidence in the record regarding Plaintiff's speed is her own testimony. The fact that it was elicited after much back-and-forth may affect the weight that a jury would give to such testimony, but it is not sufficient to create a genuine issue of material fact.

[7] Archer does not provide a precise description of the location or type of the barriers. Instead, Mr. Skaggs's affidavit somewhat vaguely notes (1) "Archer took precautions to warn the public that South Douglas Blvd. was under construction," (2) "Archer had barricades on South Douglas Blvd. notifying the public that the road was closed," and (3) "Archer had placed fluorescent barricades near the pile of gravel altering anyone traveling on South Douglas Blvd. that it was a construction zone; and thus, construction materials were near such barricades." [Doc. No. 15-1] ¶¶ 7–9. Plaintiff asserts "[t]he barricades provide no warning regarding the pile of construction materials as they are located away from the pile and are turned to the east rather than in the north or south directions of travel." Pl.'s Resp. to Def.'s UMF ¶ 19. Undated photos show three orange and white barriers set up parallel to the gravel pile—that is, not blocking the road. [Doc. No. 15-1] at 5. And when asked whether "reflectors or warning signs" were placed to give "the location of the rock pile," Plaintiff answered, "No. They don't have." [Doc. No. 19-2] at 183:4–7.

4

while she admitted there are often construction materials in construction areas, she testified that she "[did]n't remember seeing [construction] materials" near the roads at the Draper Facility prior to the accident. [Doc. No. 19-2] at 64:10–18. Nor was Plaintiff told to avoid South Douglas during the construction, despite the fact that she believes construction workers saw employees using the road.

### III. Discussion

Under Oklahoma law,[8] a negligence claim requires a showing of "1) a duty of care owed by defendant to plaintiff, 2) defendant's breach of that duty, and 3) injury to plaintiff caused by defendant's breach of that duty." *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007). Archer seeks summary judgment on Plaintiff's claim, arguing that it neither owed a duty to Plaintiff nor caused her injuries. To prevail on summary judgment, Archer must demonstrate that there is no genuine issue of material fact as to either duty or causation. Because it cannot do so, the Motion is DENIED.

### a. Duty

The existence of a duty is a question of law. *Id.* at 964. The duty analysis differs depending on whether the claim involves premises liability or simple negligence.[9] In premises liability cases, the duty owed by a landowner depends on the status of the entrant

---

[8] Because federal subject matter jurisdiction is predicated on diversity of citizenship, state law governs. *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105–06 (10th Cir. 2016). Like the parties, the Court applies Oklahoma state law.

[9] "'Premises liability' is a term used by the Oklahoma Supreme Court to describe liability sounding in negligence for injuries sustained on real property owned or operated by the defendant." *Blissit v. Westlake Hardware, Inc.*, No. 09-CV-58-TCK-FHM, 2010 WL 1078453, at *1 (N.D. Okla. Mar. 18, 2010) (citing *Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1082–83 (Okla. 1997)).

as a trespasser, licensee, or invitee. *Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1082–83 (Okla. 1997). Landowners owe the highest duty of care to invitees, but usually have no obligation to warn about open and obvious dangers. *Wood v. Mercedes-Benz of Oklahoma City*, 336 P.3d 457, 459 (Okla. 2014).

But both parties expressly acknowledge that Archer is not the landowner. The proper analysis, therefore, does not involve the tripartite classification system applicable to landowners.[10] Nevertheless, Archer attempts to shield itself with the open and obvious doctrine. Plaintiff opposes this tactic. She argues that, in a simple negligence case like this one, Archer cannot rely on a defense available to landowners in premises liability cases.[11]

A threshold issue, then, is whether Oklahoma law permits the use of the open and obvious defense in cases of simple negligence. Archer cites no caselaw for the proposition that a defense to a *premises liability* claim is applicable to a *simple negligence* claim. Instead, it simply argues that "the same principles of open and obvious hazards in relation to premises liability claims are equally applicable" because "[s]uch principles of open and obvious hazards negate even a landowner's heightened duty of care; and thus, logic follows that such also negates a lower ordinary standard of care." Mot. [Doc. No. 15] at 8. This

---

[10] Archer explains that it "simply had a duty to exercise ordinary care to avoid injury to others," apparently conceding its duty of care is not coextensive with the landowner's duty. [Doc. No. 15] at 8 (citing Okla. Unif. Jury Inst. 9.2). Similarly, Archer does not contend it was a possessor or occupier of the land, nor does it present evidence from which the Court can draw that conclusion.

[11] In its Reply, Archer appears to argue for the first time that this is a premises liability case. *See* [Doc. No. 20] at 2–3. But it still stresses that it "is not the landowner" and "does not have the heightened duty of care of a landowner." *Id.* at 2.

argument appears to be in tension with Oklahoma caselaw involving the open and obvious doctrine. *See Miller v. David Grace, Inc.*, 212 P.3d 1223, 1232 (Okla. 2009) (rejecting contractor's reliance on open and obvious defense outside of the premises liability context); *Scott v. Archon Grp., L.P.*, 191 P.3d 1207, 1213 (Okla. 2008) (drawing distinction between the "determination of duty under principles of general negligence" and "those governing the law of premises liability").

To be sure, the Oklahoma Supreme Court has softened the rigid separation of general negligence principles and those sounding in premises liability. *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 975 (10th Cir. 2015) (citing *Wood*, 336 P.3d 457). But *Wood*—in which the Oklahoma Supreme Court applied the general negligence principle of foreseeability in the premises liability context—involved the inverse of what Archer seeks here. Archer asks the Court to excise the open and obvious doctrine out of the premises liability context and import it into the general negligence analysis. Without any indication that the Oklahoma Supreme Court would endorse importation in this direction—that is, using a premises liability defense to define a general negligence duty—the Court finds Archer's argument unavailing.[12] *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66

---

[12] Even if Archer could rely on the open and obvious defense, issues of fact would still preclude summary judgment in its favor. Though the existence of a duty is a question of law, if "conflicting evidence is presented on the issue of the open and obvious nature of a defect, the question must be resolved by the trier of fact." *Sholer v. ERC Mgmt. Grp., LLC*, 256 P.3d 38, 44 (Okla. 2011). Further, "[w]hat would normally be considered an open and obvious danger may become a latent defect because of the conditions existing at the time of injury." *Id.* Archer points to the size of the gravel pile, arguing "it is hard to imagine a more open and obvious object than a six-to-eight-foot pile of gravel." [Doc. No. 15] at 12. But Archer's exclusive reliance on the size of the gravel pile discounts the other conditions present during the accident, including the stormy weather, lack of lighting, and placement of barriers.

7

(10th Cir. 2007) ("In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. . . . Ultimately, [] the Court's task is to predict what the state supreme court would do." (quotations omitted)). Because this is the only argument Archer advances with respect to its duty (i.e., it does not seek summary judgment on the proposition that it owed no common law duty of care to Plaintiff), the Court need go no further.

  b. **Causation**

Next, Archer argues that it did not proximately cause Plaintiff's injuries. While the issue of proximate cause presents a question of fact for the jury, summary judgment may still be appropriate when "there is no evidence from which a jury could reasonably find a causal nexus between the act and the injury." *Jackson v. Jones*, 907 P.2d 1067, 1073 (Okla. 1995). Archer contends that a jury could not reasonably find the required causal nexus because "Plaintiff's actions, and the weather conditions were supervening acts which ultimately caused Plaintiff's injuries, not Archer." Mot. [Doc. No. 15] at 13.

A supervening cause "insulate[s] the original actor from liability" when it is "(1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable to the original actor." *Graham v. Keuchel*, 847 P.2d 342, 348 (Okla. 1993). Archer argues Plaintiff severed the chain of causation by choosing "to drive a golf cart between fifteen and twenty miles per hour with dim headlights, on a street that had no lights, on a dark sleeting night, with a scratched plastic windshield with no wipers, and no seatbelt; in an active construction area that had

construction materials, such as the large gravel pile at issue." [Doc. No. 15] at 17–18. Additionally, Archer alleges "Plaintiff could have taken at least two other routes and avoided the gravel pile entirely." *Id.* at 18. In response, Plaintiff focuses on the foreseeability of the accident, pointing to evidence that Archer knew city employees traveled on South Douglas as part of their job duties but still "chose to place the construction material" in the roadway "without reflectors or barricades actually warning of the construction material location." Resp. [Doc. No. 19] at 16. Construing the evidence in the light most favorable to Plaintiff, the Court agrees that a genuine issue as to the foreseeability of Plaintiff's accident precludes summary judgment.

Though South Douglas was closed to the public, there is evidence in the record that Archer's workers had seen City employees using the road to complete their job duties. Additionally, photos of the barricades show they were placed in a manner where they would not be visible to workers traveling toward the pile from either the north or south—the direction in which those workers drove to and from the generator building. Thus, a reasonable jury could conclude that Plaintiff's accident was foreseeable given Archer's choice to situate the gravel pile on South Douglas.

Archer's reliance on *Hunter Construction Co. v. Watson* is misplaced. 274 P.2d 374 (Okla. 1953). In that case, the decedent's employer specifically told him not to use a piece of heavy machinery on a hill. The Oklahoma Supreme Court found that the decedent's choice to use the machinery on the steep hill was a "subsequent independent act," and that the employer's negligence "merely furnishe[d] a condition by which the injury was made possible." *Id.* at 377. In contrast, Plaintiff testified she was never told to

9

avoid South Douglas during construction, despite Archer employees' apparent knowledge that she used the road for outside rounds.

Similarly, Archer's assertion that Plaintiff could have taken another path is not sufficient to warrant summary judgment in its favor. Archer cites *Munroe v. Schoenfeld & Hunter Drilling Co.*, a case in which a worker died after jumping from the high side of a drilling rig rather than taking the steps on the opposite side. 61 P.2d 1045, 1046 (Okla. 1936). There the court found "the subsequent and independent act of the employee was the proximate cause of his injury." *Id.* at 1047. Though at least two other routes were available to Plaintiff, she has presented evidence that she was trained to take South Douglas to the generator building, and that the other paths required her to drive over large hills. Unlike in *Munroe*, then, it is not clear from the record that there was a "safer" route for Plaintiff to take. Accordingly, there is sufficient evidence of proximate cause to warrant submission of this case to a jury.

### IV.   Conclusion

IT IS THEREFORE ORDERED that Archer's Motion for Summary Judgment [Doc. No. 15] is DENIED.

IT IS SO ORDERED this 12th day of September, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE